UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| John William Butler III | ) | Case No. 2:21-CV-05778 RGK(GJS) |
| Plaintiff, | ) | |
| | ) | COMPLAINT FOR DAMAGES |
| v. | ) | VIOLATION OF CONSTITUTIONAL |
| | ) | RIGHTS UNDER EIGHTH AMENDMENT |
| Jaspal Dhaliwal MD, William | ) | BIVENS CLAIM |
| Watson MD, Galyna Mishchenko | ) | JURY TRIAL DEMANDED |
| FNP, Jason Christopher NREMT-P | ) | |
| ASHA, Patricia V. Bradley | ) | |
| Complex Warden, Victoria | ) | FILED |
| Balogun NP, Alan Wong RNP, | ) | CLERK, U.S. DISTRICT COURT |
| Elsa Cagney RN, et al. and | ) | JUL 15 2021 |
| Does | ) | |
| Defendants, | ) | CENTRAL DISTRICT OF CALIFORNIA |
| | | BY     KWW     DEPUTY |

I.    PRELIMINARY STATEMENT

1. This is a civil action brought under the United States Constitution

pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,

403 U.S. 388 (1971) ("Bivens") concerning defendants' extraordinary deliberate

indifference to the serious medical needs of Plaintiff John William Butler,

III. And still to date is incarcerated at a Federal Bureau of Prisons ("BOP")

facility. The Federal Correctional Institution Lompoc Low ("FCI Lompoc"), in

Lompoc, California.

2. When Mr. Butler was transferred to FCI Lompoc in January 2018, BOP

Medical Staff were aware of Mr. Butler's serious Chronic Care medical needs

based on Mr. Butler's "ASSESSMENT" for Chronic Care. Mr. Butler was tested for

SARS-COV-2-RNA ("COVID-19") at FCI Lompoc's "Inner Compound." On May 7th,

2020, Mr. Butler's lab results from the "Westpac Labs" facility reported to

the BOP Medical Staff that Mr. Butler tested "positive" for COVID-19. For months

between May 2020 and still to date of filing of this claim, Mr. Butler has

complained to the named defendants weekly and monthly about experiencing

"daily pain in his chest due to chronic coughing all day long, everyday."

This includes: daily dizzy spells - to the point of feeling like he was going

-1-

to faint or fall out on any number of dizzy spell episodes, which feel like being a fish out of water or an extreme weight on his chest. Despite these weekly and monthly complaints and Mr. Butler's extensive history of Chronic Asthma, Hypertension, Post Traumatic Stress Disorder ("PTSD"), and now Stage 3 Kidney Disease; Defendants ignored multiple obvious signs and symptoms of dangerous life threatening neglect by allowing Mr. Butler's Blood Pressure ("BP") to go uncontrolled for months untreated, and now his health also shows signs of a now damaged heart. Thereby damaging Mr. Butler's kidneys permanently to Stage 3 Chronic Kidney Disease ("CKD"). Prior to his incarceration, Mr. Butler's kidney function were in excellent condition.

    3. Mr. Bulter, now seeks damages for the substantial pain and suffering, physical injury, permanent injury, emotional and psychological suffering, and financial losses caused by the Defendant's conduct.

**II.      JURISDICTION AND VENUE**

    4. This Court has original jurisdiction over the subject matter of this Complaint under the Eight Amendment to the United States Constitution, and 28 U.S.C § 1331.

    5. Venue is appropriate in this Court under 28 U.S.C. §1391 (b)(2), as a substantial part of the events or omissions give rise to the claim occurred and is still to date occurring at FCI Lompoc, in Lompoc, California, which is situated within this District.

**III.      PARTIES**

    6. Plaintiff, John William Butler, III, age 55, was, and still to date of this Complaint, is an inmate at FCI Lompoc, in Lompoc, California.

    7. Defendant Jaspal Dhaliwal MD. was and still to date is relevant to this Complaint, employed by the BOP, as a Medical Doctor at FCI Lompoc.

    8. Defendant, William Watson MD. was and still to date is relevant to

this Complaint, employed by the BOP, as a Medical Doctor at FCI Lompoc.

9. Defendant, Galyna Mishchenko FNP. was and still to date is relevant to this Complaint, employed by the BOP, as a Federal Nurse Practitioner at FCI Lompoc.

10. Defendant, Jason Christopher NREMT-P/ASHA was and still to date relevant to this Complaint, employed by the BOP as a Health Services Administrator at FCI Lompoc.

11. Defendant, Alan Wong NRP. was and still to date is relevant to this Complaint, employed by the BOP as a Medical NRP.

12. Defendant, Elsa Cagney RN. was and still to date is relevant to this Complaint, employed by the BOP as a Medical RN at FCI Lompoc.

13. Defendant, Patricia V. Bradley, Complex Warden was and still to date is relevant to this Complaint employed by the BOP as a Complex Warden at FCI Lompoc.

14. At all times relevant to this Complaint, all Defendants were and still to date are acting within the scope and course of their employment with the BOP.

15. At all times relevant to this Complaint, all Defendants acted in concert and conspiracy, and were jointly and severally responsible for the harm and permanent damage caused to Mr. Butler.

16. At all times alleged herein, each Defendant was and is an agent of the other Defendants.

17. Plaintiff is informed and believes, and thereon alleges that Defendants sued herein includes nurses, doctors, and/or other medical personnel employed by the BOP; were responsible for Mr. Butler's essential medical care and safety. Plaintiff alleges that each Defendant was, and is in some manner responsible for the acts and omissions alleged herein. When Plaintiff refers to Defendants herein, it includes et al. inclusive of nurses, doctors, and/or other medical

personnel employed by the BOP.

IV.        FACTUAL ALLEGATIONS, HYPERTENSION AND ASTHMA IN A CORRECTION ENVIRONMENT

18. High blood pressure (Hypertension) is extremely dangerous if not
controlled over long periods of time, widely known as the "silent killer."
Uncontrolled high blood pressure can lead to a number of disabilities, such
as a very poor quality of life, or even a fatal heart attack, stoke, and even
can lead to death. Proper treatment can help control high blood pressure to
reduce the threat, and risk of life-threatening complications. Over periods
of time, by allowing high blood pressure to go uncontrolled, and treated
unproperly can lead to, aneurysm, where a section of the artery wall enlarges
to form a bulge, potentially rupturing and causing life threatening internal
bleeding. Uncontrolled for long periods of time can cause heart damage, such
as Coronary Artery Disease, enlarged left heart, heart failure, severe permanent
kidney damage, transient ischemic attack (TIA), stroke, demnetia, mild cognitive
impairment, kidney scarring (Glomerulosclersis), kidney failure, damage to
the retina (retinopathy), fluid build up under the retina (choroidopathy),
nerve damage, and when the lining that covers the heart becomes inflamed, the
patient will experience chest pains.

20. When untreated, complications can be fatal or bring about more permanent
damages.

21. As recognized by persiding United States District Court Judge, Marco
Hernandez, (Case No. 3:16-cr-00226-HZ) that plaintiff, Mr. Butler, does show
"extraordinary and compelling history of chronic care, and that the Court
acknowledge his medical conditions as "extraordinary and compelling."

22. Reasonably trained correctional health care professionals are especially
attuned to the risks presented by "chronic care," medically documented inmates,
and should ensure compliance with established protocols and practices for the
rapid diagnosis and treatment of inmates with documented "chronic care" needs.

23. Reasonably trained correctional health care professionals know that an inmate with documented "chronic care" needs should be evaluated every few months. By allowing months on end with daily chronic coughing, dizzy spells, shortness of breath, chest pains, racing heart rate, along with consistent elevated blood pressure levels for long periods of time, are at an extreme risk of heart attack, stroke, permanent damages, and death. And accordingly require a specialist's treatment, monitoring the patient with repeated evaluations.

**B.      Defendants' Deliberate Indifference to Mr. Butler's Serious Chronic-Care Medical needs and failure to provide proper treatment in a reasonable amount of time has caused permanent damages**

24. In January 2018, Mr. Butler was transferred to FCI Lompoc as a result of a federal criminal conviction and sentence via Sheridan, Oregon.

25. While Mr. Butler's incarceration at FCI Lompoc, there was an outbreak of the deadly Coronavirus (COVID-19), where over 90% of the inmate population was infected in April 2020. FCI Lompoc went on "full-lockdown," where no Sick-Calls nor medical attention was done until the month of August 2020; then it had only been temprature checks and blood pressure checks done.

26. While at FCI Lompoc, Mr. Butler tested positive for COVID-19 on May 6, 2020 due to neglagent handling of the COVID-19 outbreak in FCI Lompoc; With staff and officials violating COVID-19 protocols, policy, and procedures set forth by both the Center for Disease Control & Prevention ("CDC") and the BOP. Thus subjecting Mr. Butler to a life threatening disease.

27. Medical Staff at FCI Lompoc have known, had knowledge of and still to date allowed the continual pain, suffering, and permanent damages of Mr. Butler to continue to date of claim.

28. Medical Staff at FCI Lompoc, including Defendants, knew, by virtue of their access to all of Mr. Butler's documented chronic care medical needs, by records maintained by the BOP, that Mr. Butler for months, and still to

date of claim, has been pleading with Medical Staff weekly of pain in chest, daily chronic coughing, dizzy spells, shortness of breath, racing heart beat, and months of extreme elevated blood pressure.

29. For these reasons, upon Mr. Butler's arrival at FCI Lompoc, Defendants were aware that Mr. Butler has "chronic care" serious medical conditions, that could debilitating and fatal if not monitored and treated adequately.

30. Because Medical Staff and Defendants' at FCI Lompoc knew of Mr. Butler's documented chronic care serious medical conditions, the medical staff's ensuing failure to diagnose, treat, and prevent further medical harm and damage to Mr. Butler as a result of his kidneys and heart, as described below, was, and still to date of claim, recklessly and deliberately indifferent to his essential safety, health, and life.

31. Mr. Butler's first medical encounter wasn't until July 2, 2020, since FCI Lompoc had been on "full lockdown" since April of 2020, where he was seen by PA-C Lisa Hoen. Mr. Butler complained of pain in his chest, dizzy spells, shortness of breath, racing heart, chronically coughing daily, and producing green/brown mucus. This encounter on July 2, 2020, was not performed at Medical, as it was done in the "TV Room." PA-C Hoen, stated she observed/inspected "coughing, severe production of green/brown mucus, respiratory distress, and tachypnea." (See Exhibit ___ page ___)

32. July of 2020, was the first month that FCI Lompoc Medical Staff finally provided some means of inmate-medical communication. Four months had elapsed without medical attention at the time. Thereby allowing months of neglect to chronic care inmates within the facility.

33. On August 3, 2020, Mr. Butler was seen by Defendant Jaspal Dhaliwal. Mr. Butler's blood pressure was 148/96, Mr. Butler complained of daily pain in his chest, daily chronic coughing, dizzy spells, shortness of breath, and racing heart beats all the time. Mr. Butler stressed that he had been at the

time six weeks without his prescribed medication of an inhaler. Defendant
Dhaliwal then sent Mr. Butler to his dorm.

34. On August 30, 2020, Mr. Butler was scheduled to see the doctor, the
appointment with the doctor was cancelled, but Mr. Butler's blood pressure
was taken and his blood pressure was 152/100.

35. On August 30, 2020, Mr. Butler was having respitory issues, struggling
to breathe. Mr. Butler was seen by Defendants' NP Victoria Balogun, and NRP
Alan Wong. Mr. Butler stated that he could not breathe, had pain in his chest,
dizzy spells, and extreme heart beats. Mr. Butler's blood pressure was taken
twice, the first was 171/131, and the second was 162/123, however, neither
one of these blood pressure test results were documented. Defendant Balogun
did a series peak flows that were in the 225-250 range, then issued Mr. Butler
a "Nebulizer treatment" for his lungs, then Defendant Balogun stated to Mr.
Butler that he would be receiving nebulizer treatments with daily blood pressure
checks once a day for an entire week. Not one occurred after this date. Mr.
Butler also asked Defendant Balogun, "Why aren't I going to the hospital?"
NP Balogun replied, "You don't need to go to the hospital."

36. On September 1, 2020, around 11:15 AM, the Court appointed investigating
doctor, Dr. Homer Venter for the <u>Torres et al. v. Milusnic et al.</u> class action
lawsuit did an inspection of FCI Lompoc. Dr. Venters spoke with numerous BOP
Staff including the Acting Warden, Defendant P. Bradley. Where on the third
floor of Building B, Mr. Butler briefly spoke with Defendant Bradley; Mr. Butler
explained to her his chronic care medical issues, stressing that he was being
denied medical attention. Defendant Bradley looked at Mr. Butler and gave him
a thumbs up gesture and walked away laughing.

37. On September 1, 2020, Mr. Butler went to FCI Lompoc's Psychology
Department due to his documented PTSD. Mr. Butler stated he was in fear for
his life due to the medical neglect he had been subjected to, and that it had

traumatized Mr. Butler by being with Mr. Muhamed Yousef, #81882-053, while
he died in front of the entire E Floor of B Dorm; all the while watching Medical
Staff do nothing to save his life. Mr. Butler stated to Psychologist L. Okonowsky
that his blood pressure checks have roughly 171/131 and 162/123. Ms. Okonowsky
then stated that maybe Mr. Butler was "thinking too much into it." Ms. Okonowsky
then sent Mr. Butler back to his dorm.

38. September 9, 2020, at 7:45 AM, Mr. Butler saw Mr. Van Fleet at Medical,
where Mr. Van Fleet took Mr. Butler's blood pressure and the results were 149/107.

39. On September 10, 2020, Mr. Butler was seen by Defendant FNP G. Mishchenko
at Medical. Ms. Mishchenko stated to Mr. Butler that she was "sorry." Mr. Butler
asked what she was sorry for. Ms. Mishchenko then stated, "you now have Stage
3 Kidney Disease." Mr. Butler asked the Defendant if she had the correct inmate,
then Defendant Mishchenko recited Mr. Butler's BOP Register Number and stated
again that she was "sorry." Mr. Butler's prior blood pressure results had been
consistently elevated for long period of time, with typical readings of 171/131,
162/123, 149/107. Mr. Butler had complained of having daily pain in his chest,
dizzy spells, shortness of breath, racing heart beats for months, and asked
why he was not being scheduled to see a specialist for his heart, lungs, and
now kidneys. Defendant Mishchenko stated, your blood pressure levels are only
slightly elevated. You're fine." Mr. Butler was then sent back to his dorm.

40. September 23, 2020 at a Medical Sick-Call, Defendant Mishchenko FNP.
did a blood pressure check which had results of 141/91 and a peak flow reading
of 325-350 range. Defendant Mishchenko at this point told Mr. Butler that she
"could do nothing for him and to just go ahead and sue her, and that she really
didn't care." On this same date and time, Defendant Mishchenko discontinued
all of Mr. Butler's documented chronic care medications in retaliation to Mr.
Butler consistently attempting to receive proper and adequate medical attention.

41. September 29, 2020 at PM Pill Line, Mr. Van Fleet stated to Mr. Butler

while looking at the BOP Medical Computer System (known as BEMR) that Defendant
Mishcheno FNP. had discontinued all of Mr. Butler's medications and that was
the reason why Mr. Butler had been waiting for his medication. Mr. Butler asked
Mr. Van Fleet to please email the Defendant J. Christopher, the Health Services
Administrator that he please correct his staff and the retaliation from Defendant
Mishchenko. Mr. Van Fleet stated he, "would do what he could."

42. On September 30, 2020, while on the Inmate Computer System (Core-Links),
Mr. Butler requested to refill his prescribed medication, Symbicort
(Budesonide/Formoterol) a specialty Asthmatic medication that Mr. Butler had
been prescribed by a BOP Specialist for his documented Asthma.

44. On October 4, 2020 at Lunch at 11:15 AM, Mr. Butler was days without
his documented, prescribed medication. Mr. Butler spoke with the Office in
Charge ("OIC"), Lt. White in regards to struggling with Medical Staff for not
receiving his documented prescribed mediation, which was due to Defendant Mishchenko's
retaliation. Lt. White stated that he "would speak with Health Services Administrator
("HSA"), Jason Christopher."

45. On October 8, 2020, at Medical Sick Call at 9 AM, Mr. Butler was
seen by Defendant Mishchenko where his blood pressure was checked twice, where
the first blood pressure results were 159/114 and his second blood pressure
results were 154/107. A blood draw was done and Mr. Butler stated again that
he had daily pain in his chest, daily chronic coughing, dizzy spells, shortness
of breath, and a racing heart rate. Mr. Butler again asked why he was not being
seen by a heart, lung, or kidney specialist to date. Defendant Mishchenko stated,
"you're fine." Mr. Butler was then seent back to his dorm.

46. On October 15, 2020 at 2 PM, Mr. Butler was called into Medical to
see Defendant Dr. Watson. Dr. Watson laid Mr. Butler down to check his blood
pressure, then he checked Mr. Butler's weight, height, and that was all Dr.
Watson did. He did not listen to Mr. Butler's lungs, check his temp, oxygen

levels, etc. Defendant Dr. Watson at the time on this date, stated to Mr. Butler, that he was going to put Mr. Butler in for Cardiologist and a Pulmonologist. He stated that he wanted numerous tests done such as EKG and an MRI. Defendant Dr. Watson stated he was placing Mr. Butler on new medication. Mr. Butler found out days later that none of what Dr. Watson stated was ever done. Mr. Butler once again stressed that he was feeling like a fish out of water and that every time he coughed it felt like a closed fist being pulled through his chest. Mr. Butler stated to Dr. Watson that it felt like a heavy weight on his chest – like his heart always racing in his chest. Defenant Dr. Watson said nothing to this statement, then sent Mr. Butler back to his dorm.

47. On October 26, 2020, Mr. Butler saw Defendant Mishchenko. She saw that Mr. Butler's first blood pressure test results were 154/111, and the second was 147/106. Mr. Butler again complained of daily pain in his chest, daily chronic coughing, dizzy spells, shortness of breath, and a racing heart beat in his chest. Mr. Butler asked Defendant Mishchenko if he was scheduled to see any specialists, then Defendant Mishchenko stated, "no." Mr. Butler stated that he had seen Dr. Watson on October 15, 2020 and that Dr. Watson stated he wanted an EKG and an MRI done on Mr. Butler. Defendant Mishchenko stated that none of this had been requested by Dr. Watson and that Mr. Butler was fine. Mr. Butler was then sent back to his dorm.

48. On October 27, 2020 at PM Pill Line, Medical Staff Mr. Fabie stated to Mr. Butler that he "still had no medication for him." Mr. Butler responded that, "this has happened here numerously" and that it had been two weeks already without his medication. Mr. Fabie stated to Mr. Butler that he would once again email the pharmacy.

49. On October 30, 2020 at Medical, Mr. Butler saw Defendant Dr. Jaspal Dhaliwal, Mr. Butler stated he had once again been weeks without his prescribed medication, Defendant Dhaliwal called the Pharmacy, and asked what was taking

Mr. Butler's medication so long, Mr. Butler then stressed his daily pain in his chest along with daily chronic coughing, dizzy spells, shortness of breath, and his racing heart beat in his chest. Then asked to please see specialists for his heart, lung, and kidneys. Defendant Dhaliwal did NO vitals during this medical visit; the entire encounter, Defendant Dhaliwal sat at his desk on the computer. Mr. Butler was then sent back to his dorm.

50. On November 4, 2020, during a Medical Records Call-Out saw Correctional Officer ("CO") Tappia. Masks had been mandatorly worn since the beginning of the pandemic, so Mr. Butler waited in the hallway to receive his medical file that had been requested months prior. Due to Mr. Butler's daily chronic coughing, Mr. Butler was coughing in his mask and CO Tappia came out of her office and yelled, "you need to stop coughing!" Mr. Butler stated that he has Asthma and CO Tappia stated, "I don't care." Mr. Butler was then called into CO Tappia's medical records office to receive his medical file, which had requested months prior. Then as soon as Mr. Butler had shown CO Tappia his ID Card, CO Tappia stated, "oh it's you." Then again went into a rant about inmates, Mr. Butler once again felt deliberate retaliation towards himself due to his persistence in trying to receive medical attention.

51. On November 9, 2020 at PM Pill Line, Mr. Butler saw NP Mr. Fabie. Mr. Butler showed Mr. Fabie that his documented chronic care prescribed inhaler medication was empty and that he needed a refill of his "Symbicort" inhaler. Mr. Fabie stated that he had ordered it. Mr. Butler went to PM Pill Line on 10/12/20 and again on 10/16/20 with his medication still not refilled. Then on October 17, 2020, Mr. Butler once again conferred with OIC Lt. White in regards to needing his inhaler refilled and that he had already waited a week and a half with no inhaler. Lt. White stated again that he, "would get with the Health Services Administrator, J. Christopher to see what was wrong." He also stated that. "This was wrong."

52. On November 19, 2020, Mr. Butler had three days prior been excessively bleeding out of his rectum. Mr. Butler again spoke with OIC, Lt. White, showing him his medical Sick-Call Request. Lt White immediately took the medical form to Health Services Administrator J. Christopher. Then later on this same date, Mr. Butler was seen by Defendant Dhaliwal. NP, E. Cagney did vitals on Mr. Butler, when his blood pressure results were 142/96. Defendant Dhaliwal came into the room and stated he was requesting Mr. Butler to see specialists. Mr. Butler asked Defendant Dhaliwal, "Shouldn't I be going to the hospital?" Defendant Dhaliwal stated, "No you're fine." Mr. Butler was then sent back to his dorm.

53. On Novmember 21, 2020, CO Graf was working in Mr. Butler's Unit, B Building, during Day Shift and this officer had recently tested positive for COVID-19. Mr. Butler asked CO Graf why he was  working. CO Graf stated that, "he had to."

54. On November 23, 2020, during a Medical Call-Out, Mr. Butler saw FNP Ms. Mishchenko with PA-C, J. Brown for his rectal bleeding. A rectum swab was done suggesting pressence of blood. Defendant Mishchenko did a field-test for cancer. Then it was told to Mr. Butler that it had come up negative. Mr. Butler then asked why wasn't he sent to the hospital to be properly checked out. Defendant Mishchenko stated, "you don't need to go to the hospital. We're seeing you now." Mr. Butler again stressed his daily pain in his chest and pleaded with Defendant Mishchenko that he please see specialists for his heart, lungs, and kidneys. Defendant Mishchenko finally stated that she would, "put Mr. Butler in to see a Cardiologist."

55. On December 7, 2020, during a Medical Call-Out, Mr. Butler saw PA-C, J. Brown, who went through a blood panel with Mr. Butler, showing him his stage 3 Kidney Disease. Mr. Butler again asked to see a heart, lung, and kidney specialist, due to proof of months on end with extreme high levels of blood pressure being

allowed, daily pain in his chest, daily chronic coughing, dizzy spells, shortness of breath, and a racing heart beat in his chest. PA-C, J. Brown stated, "it is concerning" and that he would check into it. Mr. Butler was then sent back to his dorm.

56. On December 26, 2020, during a Medical Call-Out, Mr. Butler saw Hospital RN-1, Defendant E. Cagney. Who did a blood pressure check, with the first results from his left arm showing a result of 158/124, then the second test was done on his right arm, which gave test results of 157/111. Defendant Cagney then did two peak flow tests that resulted in the range of 250. On the same date, Mr. Butler was called out during the evening to Medical by Mr. Fabie, where an EKG was performed and a blood pressure check was taken with results of 158/109.

57. On December 21, 2020, at Medical, Mr. Butler was seen by PA-C, J. Brown where a blood pressure check was done which was 127/92, again Mr. Brown went over Mr. Butler's medical chart, then Mr. Brown stated that he was going to try to put Mr. Butler in for a lung specialist and that "he felt it was long overdue" due to his documented Asthma . Mr. Butler again stressed the daily pain in his chest, daily chronic coughing, shortness of breath, dizzy spells, and the racing heart in his chest. Mr. Butler at this time stressed fear of dying in prison due to not properly treating his medical conditions. Mr. Brown stated that he, "was sorry" and that he would do what he could.

58. On December 28, 2020, Mr. Butler checked his Core-Links email (Inmate Computer System). Mr. Butler viewed upon his health services system that on November 23, 2020, a Cardiologist and Gastroenterologist on site visit was approved on November 27, 2020. However, no request for a lung or kidney specialist was ever requested. Also noted that on site specialist did not have the proper equipment to conduct a thorough or adequate, efficient meedical diagnosis of a patient due to limitations of the equipment essential to their speciality.

59. On December 30, 2020 during a Medical Call-Out, Mr. Butler saw PA-C J. Brown. Mr. Brown went over all of Mr. Butler's medication and stated that he was at the "max dosages" for medications. Mr. Brown stated he was trying to get Mr. Butler in for a Pulmonologist (lung specialist), that Mr. Brown felt was overdue. Mr. Butler again complained of pain in his chest everytime he coughed, daily dizzy spells, shortness of breath, and a racing heart beat in his chest. Mr. Brown seemed sypathetic with Mr. Butler, but stated that, "he was limited in what he could do."

60. On January 5, 2021 during PM Pill Line, Mr. Butler saw Mr. Fabie regarding the directions on his inhaler medication, which states, **"if more is needed take a Sick-Call to Pill Line with the empty container to be returned for refill."** The ProAir-HFA, inhaler 8.5 GM, is usually only refilled once by BOP Medical Staff every 90 days. This is totally insufficient in regards to documented Asthmatic within the BOP system. There is at prescribed dosages by the Physician, **"2 puffs in the morning and 2 puffs at night."** The inhaler only allows for 200 metered inhalations. That's the equivalent to 50 days of medication per prescription by the physicians of the BOP. But the Medical Staff only refill it once every 90 days, causing a documented asthmatic to suffer for up to 40 days, close to a month and a half without their prescribed medication. Mr. Butler has fought with FCI Lompoc Medical Staff on this issue "numerously," to no avail.

61. On January 7, 2021 during PM Pill Line, Mr. Butler saw Mr. Fabie. Mr. Butler asked if his inhaler had been refilled, as it was last dated 11/20/20. Mr. Fabie stated that he was told that, "you need to wait the 90 days." Mr. Butler stated that, "there is only 50 days worth of medication in the inhaler." Mr. Fabie stated that he knew this but that he could do nothing about it.

62. On January 8, 2021 during PM Pill Line, Mr. Butler saw Mr. Wong. Mr. Butler tried to once again receive his inhaler. Mr. Butler had returned for a refill days prior. Mr. Wong stated he "couldn't do anything about it." Mr.

Butler then asked, "can't you at least email someone, or request someone to please refill his inhaler?" Defendant Wong stated, "No."

63. On January 10, 2021, Mr. Butler spoke with SIS Lt. Penada on needing his inhaler. Mr. Penada took down Mr. Butler's information and stated, "I know that you have had issues with this problem and medical before."

64. On January 11, 2021 during PM Pill Line, Mr. Butler saw Mr. Fabie. Again Mr. Butler tried to get his prescribed medication for his documented Chronic Care Asthma. Mr. Fabie staed to Mr. Butler, "the pharmacy said you needed to wait the 90 days." Mr. Butler asked Mr. Fabie, "what does the pharmacy have to do with a prescribed medication that was prescribed to me by a BOP Physician?" Mr. Fabie threw his hands up in the air and stated, "I can't do anything Butler."

65. On January 11, 2021, during Lunchtime, Mr. Butler spoke with OIC Lt. Moorhead. Mr. Butler showed Lt. Moorhead his BP-9s (greivances) per Medical on neglecting him on his prescribed medication. Lt. Moorehead stated, "He was sorry, but that he couldn't do anything and that Mr. Butler should 'file on them.'"

66. On January 11, 2021, Mr. Butler verifies that he was denied to see a Pulmonogist. January 4, 2021, PA-C J. Brown had request on December 21, 2020. Mr. Butler had shown for months and still to the date of this claim, with peak flows in the low 200 range, daily chronic coughing, dizzy spells, shortness of breath, and a racing heart beat in his chest, plus months of extreme levels of triple digit numbers on blood pressure checks; and still to date of this claim no request for a kidney specialist.

67. On January 12, 2021 at 7:03 PM, Mr. Butler was called FCI Lompoc Medical Staff, Mr. Fabie to do a blood pressure check, which results were 158/98, an EKG, and peak flows with results in the 200 range.

68. On January 13, 2021, during a Medical Call-Out for Hospital RN-1, Defendant E. Cagney did a blood pressure check which was 152/118. Mr. Butler

stated to her the daily pain in his chest, the daily chronic coughing, dizzy spells, shortness of breath, and racing heart in his chest. NP Cagney stated that, "I'm just supposed to check your vitals."

69. On January 13, 2021, during an Eye Doctor Call-Out, Mr. Butler received an X-Ray of his lungs instead of seeing the Eye Doctor. Mr. Butler saw Defendant Dhaliwal in the hallway and Mr. Butler expressed to Dr. Dhaliwal that he has been more than a couple of weeks without his inhaler. Defendant Dhaliwal stated, "you'll be fine." Then walked away.

70. On January 15, 2021 during PM Pill Line, Mr. Butler saw Defendant Wong. Mr. Butler asked if his inhaler had been refilled. Mr. Wong stated, "The Pharmacy says you're to wait the 90 day." Mr. Butler asked Mr. Wong, "what does the Pharmacy have to do with a prescribed medication by a BOP Physician". Mr. Wong stated that he would email someone.

71. On January 19, 2021 during PM Pill Line, Mr. Butler saw Mr. Fabie. Mr. Butler once again stressed that he was in need of and still out of his documented, prescribed medication. Mr. Fabie stated, " I was told by the Pharmacy that you needed to wait the 90 days." Mr. Butler once again asked Mr. Fabie, "what does the Pharmacy have to do with a prescribed medication by a physician, that has run out and the label instructs you to bring to Medical for a refill." Mr. Fabie did not answer.

72. On January 21, 2021 during a Medical Call-Out for EMT-P-1, Mr. Butler saw Defendant Wong, who did a blood pressure check that was 145/102 and Mr. Wong stated to Mr. Butler that his "COVID test" that had been done a day prior, 1/20/21 was negative.

73. On January 21, 2021 during PM Pill Line, Mr. Wong gave Mr. Butler medication for High Blood Pressure ("Hypertension"), 100 MG of "Losartan" and 10 MG of "Amlodipine," but only 18 pills were given for what was supposed to have been a 1 month/30 day supply. When Mr. Wong was notified of this, Defendant Wong only shrugged.

74. On January 25, 2021, Mr. Butler was taken at 10:35 to the Special Housing Unit ("SHU") segregation. Mr. Butler asked the CO, "why am I going to the SHU?" The CO stated that it was something for Medical. When Mr. Butler got to the SHU, he was told to drink a gallon of laxative to thoroughly cleanse his system. He was then told he was in segregation to see a Gastroenterologist. At around 3 PM, the following day, COs came to get Mr. Butler out of the SHU and told him that here had been a "mix-up" and that he was, "supposed to have been scheduled three days prior." Mr. Butler was then taken back to FCI Lompoc. It is apparent that the BOP FCI Lompoc Staff did not have a chain of command to properly carry out the scheduled appointment.

75. On February 1, 2021 at 11:05 AM in the Inner Compound during Lunch, Mr. Butler spoke with CO Estrada about needing his prescribed inhaler medication. CO Estrada took down Mr. Butler's information and stated that he would get with Lt. White on the issue. Mr. Butler stated to CO Estrada that he had been 28 days already without his prescribed medication. CO Estrada stated, "that he was familiar with Mr. Butler's medical issues and that he would see what he could do."

76. On February 1, 2021 at 6 PM during PM Pill Line, Mr. Butler saw Mr. Fabie about his inhaler, Mr. Fabie stated, "No. Mr. Butler asked if he could please email someone, then Mr. Fabie nodded.

77. On February 4, 2021 at 6:30 AM during a Medical Lab blood draw, Mr. Butler had 7 vials of blood taken from and a UA done for testing. Mr. Butler saw Defendant Mishchenko and asked her about an inhaler. Mr. Butler stated to her that he had been without one for 30 days. Defendant Mishchenko stated, "I do everything for you." But nothing was done and Mr. Butler was sent back to his dorm.

78. On February 4, 2021, around 11:45 AM, Mr. Butler was called back to

Medical where Defendant E. Cagney took Mr. Butler's blood pressure which was 158/118. Then she told Mr. Butler that, "administration wanted a word with him." Mr. Butler was taken into a back room where Defendants J. Christopher, CO Tappia, NP Wong, NP Cagney, and CO Burgos were waiting for him. Mr. Butler was told to sit down, then Defendant J. Christopher stated, "I need you to quit bombarding Medical with Sick-Call complaints," and that Mr. Butler was becoming a "nuisance." J. Christopher stated that they were going to start making Mr. Butler take all of his medication at Medical in the Morning at Pill Line and that if Mr. Butler missed any days or didn't show up for his medication that they were going to document it as a refusal. Mr. Butler stated, "fine." Defendant Christopher stated, "that Mr. Butler needed to be patient." Mr. Butler stated that he had been patient for eleven months, nearly an entire year and that his kidneys were once healthy and functional, but now they were damaged due to what he felt was the long periods of time living with extreme blood pressure levels not being treated. Mr. Butler also stated that he had been pleading to see a heart, lung, and kidney specialist for months. Defendant Christopher stated that the reason why they were making Mr. Butler take his medication at Pill Line was to, "make sure he was taking his medication." Mr. Butler stated, "your blood panels will prove that" and that, "he had seven vials of blood taken from him and a UA had been done the same morning." Mr. Butler felt that he was being once again retaliated against due to seeking proper medical attention for his essential chronic care needs.

79. Because FCI Lompoc Medical Staff know of Mr. Butler's essential serious medication conditions. The Medical Staff's ensuing failures to properly diagnose, treat, attend to, and prevent permanent damage and harm to Mr. Butler, as a result of his documented chronic care serious medical needs, as described below, is, was, and still to date of claim reckless and deliberately indifferent to Mr. Butler's essential safety, health, and life.

80. As a result of these initial visits, Mr. Butler has been daily neglected,

denied treatment and medication essential to his life and safety due to his

documented chronic care of Asthma, Hypertension, Stage 3 Kidney Disease, and

P.T.S.D.

81. In numerous medical visits, brief examinations, blood pessure and

temperature checks, months on end of extreme levels of blood pressure results,

serious low-range peak flows, knowledge of Mr. Butler's essential chronic care

medical needs FCI Medical Staff did not provide proper and adequate medical

care. Yet, neither defendants, for months at a time, referred Mr. Butler to

any specialists, follow-up treatment; nor to date have they had any urgency

to see that Mr. Butler received any treatment, diagnosis, or proper medical

care.

82. From April 2020 and still to date of claim, for months, Mr. Butler

has complained and pleaded on multiple occasions each week that he was in daily

pain from chronic coughing, dizzy spells, shortness of breath, a racing heart

beat in his chest, months of extreme levels of high blood pressure, and that

he was suffering daily and that it was becoming more and more unbearable.

83. From July 2020 and still to date of claim, Mr. Butler is still subjected

to being seen by all individual defendants. The defendants who saw and still

to date of claim see Mr. Butler only do, blood pressure and temperature checks,

with an occasional X-Ray, and blood draws with updates on medications for chronic

care.

84. As Mr. Butler's pain and daily suffering grew more serious and his

complaints more frequent for treatment, defendants failed to modify their treatment

plan in any way essential to Mr. Butler's life, health, and safety.

85. In reaching the apparent conclusion of Mr. Butler's documented chronic

care health needs, defendants deliberately, willfully and/or recklessly ignored

numerous signs that Mr. Butler to date is still suffering from serious and

dangerous medical conditions caused by being deliberately exposed for long periods of time to medical neglect.

86. On each occasion when Mr. Butler was examined or met with defendants, they were and still to date of claim are deliberately indifferent to his serious medical conditions and needs; since they were on notice that he was a documented chronic care patient and that he had been diagnosed with Asthma, Hypertension, and Stage 3 Kidney Disease. Yet, for months on end, FCI Lompoc Medical Staff allowed elevated levels of blood pressure, constant chest pains, coughing, dizzy spells, shortness of breath, and a racing heart beat in his chest for months. Defendants took no action to conduct further diagnostic testing or change their treatment plan.

87. Notwithstanding this knowledge, upon learning of Mr. Butler's newly found Stage 3 Kidney Disease, months on end of elevated levels of blood pressure, and Mr. Butler's weekly complaints of chest pains, coughing, dizzy spells, shortness of breath, racing heart in his chest, the defendants took no action to conduct further diagnostic testing or change their treatment plan.

88. Throughout this time period, and still to date of claim, the defendants were and are aware of a myriad of symptoms, as described with documented proof showing Mr. Butler's now permanent damages, injuries, and still to date have had no change in their treatment plan.

89. Defendants' knowledge of, and still to date of claim, allowing the daily pain and suffering without action in a reasonable amount of time to a chronic care patient's need as per BOP medical policy, '6031.04 Patient Care,' **"To effectively deliver medically necessary healthcare to inmates,"** purpose and scope, 6/3/14. Defendants' failure to do so was deliberately indifferent to Mr. Butler's serious medical conditions and needs.

90. **C. Mr. Butler's Damages**

-20-

On September 10, 2020 during a Medical Call-Out, Defendant FNP-G, Mishchenko stated to Mr. Butler that he now had confirmed Stage 3 Kidney Disease from months on end of allowing extreme levels of blood pressure to continue to go untreated.

91. Additionally, Mr. Butler has suffered extreme daily emotional trauma per diagnosis of P.T.S.D.. By his daily still to date of claim mistreatment by BOP, employees, and the nature and extent of his documented chronic care essential needs.

92. All of the daily pain, suffering, emotional traumatizing emotional distress, and current permanent damages done to Mr. Butler and still to date of claim, could have been avoided, and not necessary if it had not been for the deliberate indifference of the defendants.

93. As a result of Mr. Butler's injuries, to find gainful employment upon his release is now seriously limited, and as a result, Mr. Butler has sustained serious losses to his earning capacity and future earnings.

94. As a result of these conditions, Mr. Butler seeks compensation for his physical and emotional pain and suffering, future medical expenses and lost future earnings.

**D. Defeendants violation of Mr. Butler's Constitutional Rights**

95. Mr. Butler's medical and personal history, in combination with his documented chronic care essential serious medical needs provided ample opportunity for defendants to properly diagnose and treat his documented chronic care conditions before it resulted in permanent damages to his kidneys, heart, and lungs.

96. Notwithstanding defendants' knowledge of Mr. Butler's medical history and symptoms, defendants failed even to date of claim, to conduct any diagnostic testing or treatment indicated under the circumstances.

97. Further, defendants' persistent non-treatment allowed the deterioration of Mr. Butler's conditions as consistent with Non-Specific Chronic Kidney Disease ("CKD"), a damaged heart, and lungs. Doubting his credibility of his complaints and passing them off.

98. As a result of defendants' actions and inactions, Mr. Butler's Stage 3 Kidney Disease, heart, and lung conditions which were treatable has greatly aggravated and caused Mr. Butler substantial permanent damages.

99. At all times relevant to this complaint, the conduct of all defendants was in willful, reckless, and callous disregard of Mr. Butler's rights under federal law.

100. As a direct and proximate result of the conduct of all defendants, Mr. Butler and still to date of claim is experiencing significant damages as described above.

101. Defendants acted and still to date of claim are acting recklessly and with callous indifference to Mr. Butler's constitutional rights and should be assessed punitive damages.

**V.    CLAIMS FOR RELIEF**

<div align="center">

**Count 1**
**Plaintiff v. All Defendants**
**Federal Constitutional Claims [Bivens Claim]**

</div>

102. Plaintiffs incorporates by reference allegations in paragraphs 1-103, above as if fully set forth herein.

103. Defendants Jaspal Dhaliwal, MD.; William Watson, MD.; Patricia V. Bradley, Complex Warden; Galyna Mishchenko, FNP; J. Christopher, NREMT-P, ASHA; Victoria Balogun, NP; Alan Wong, NRP; Elas Cagney, RN were deliberately indifferent to Mr. Butler's documented Chronic-Care medical needs and thereby violated Mr. Butler's right to be free from Curel and Unusual Punishment under the Eighth Amendment to the United States Constitution.

VI.      **REQUESTED RELIEF**

Wherefore Plaintiff respectfully requests:

A.   Compenstory Damages as to all Defendants

B.   Punitive Damages as to all Defendants

C.   Reasonable Attorneys' Fees and Costs

D.   Such other and further relief as may appear just and appropriate

Plaintiff hereby demands a Jury Trial.

Dated: July 6, 2021

JOHN WILLIAM BUTLER, III
#79750-065
Federal Correctional Institution
3600 Guard Road
Lompoc, CA 93436-2705

John w Butler III
#79750-065

-23-

John W. Butler
#79750-065
Federal Correctional Institution
3600 Guard RD.
Lompoc, CA 93436-2705


Federal Court Clerk
Central California
G-8 United States Courthouse
312 North Spring St.
Los Angeles, CA 90012-4701

                         Re: Filing, Docket No., & Court Rules Requested

Dear Federal Court Clerk:

    I am please requesting the filing of this Federal Complaint, three copies

of the complaint are provided. Plus, I am respectfully requesting the Local

California Federal Rules for this Court's District. Thank you very much.

Respectfully

        *John W Butler III*

John W. Butler
#79750-065
Federal Correctional Institution
3600 Guard RD.
Lompoc, CA 93436-2705



310 0001 8973 0759

U.S. POSTAGE PAID
PM 2-Day
LOMPOC, CA
93436
JUL 13, 21
AMOUNT

**$0.00**
R2304N118459-12



COURT

JL 1 5 2021

ISTRICT OF CALIFORNIA
                    DEPUTY



For Domestic and International Use        Label 107R, May 2014

Federal Court Clerk
California Central
G-8 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012-4701

✳ Legal Mail ✳

John W. Butler III
#79750-065
Federal Correctional Institution
3600 Guard RD.
Lompoc, CA 93436-2705

CERTIFIED MAIL

7020 1810 0001 8973 0759

FOREVER / USA

UNITED STATES POSTAL SERVICE

1006

90012

U.S. POSTAGE PAID
PM 2-Day
LOMPOC, CA
93436
JUL 13, 21
AMOUNT
$0.00
R2304N118459-12

PRIOR
★ MAI

UNITED
POSTAL

For Domestic and

CLERK, U.S. DISTRICT COURT
JUL 15 2021
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Federal Court Clerk
California Central
G-8 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012-4701

* Legal Mail *

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

FCC LOMPOC
3901 KLEIN BLVD
LOMPOC, CA 93436

DATE 07/09/2021

The following letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened or inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another address, please return the enclosed to the above address.